# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY McMILLEN | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 14 C 4501 |
| v. | ) |
| | ) Judge Jorge L. Alonso |
| RALPH BURKYBILE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gregory McMillen, an inmate at Stateville Correctional Center, brings this lawsuit pursuant to 42 U.S.C. § 1983. (Guard Defs.' SOMF ¶¶ 1, 8.)[1] Plaintiff alleges that defendants Ralph Burkybile and Charles Best, Correctional Lieutenants employed by the Illinois Department of Corrections ("IDOC") and assigned to Stateville, violated his civil rights when they allowed his personal property to be stolen, denied his request to be given access to a crisis officer, issued plaintiff a false and retaliatory disciplinary ticket, and failed to confirm the authenticity of plaintiff's medical permit, causing him to be sent to segregation. (*Id*. ¶¶ 2-3; Am. Compl. ¶¶ 17, 19, 46, 47, 53.) Plaintiff also alleges that defendant LaTanya Williams, a physician's assistant ("PA") at Stateville, defendant Wendy Dybas, a nurse at Stateville, and defendant Saleh Obaisi, M.D., Stateville's Medical Director, were deliberately indifferent to plaintiff's serious medical needs when they refused to verify the authenticity of plaintiff's medical permit, took away his hearing aids, and deprived him of access to insulin while in segregation. (Medical Defs.' SOMF ¶¶ 4-6; Am. Compl. ¶¶ 28, 32, 37, 40, 43.) Before the

---

[1] The five defendants in this case have filed two separate motions for summary judgment [57] and [60]. The Court refers to Ralph Burkybile and Charles Best's filings as the guard defendants' filings and LaTanya Williams, Wendy Dybas, and Dr. Saleh Obaisi's filings as the medical defendants' filings.

Court are defendants' motions for summary judgment [57] and [60]. For the reasons set forth below, defendants' motions are granted.

## BACKGROUND

Plaintiff has been incarcerated at Stateville since July 1995 and has a history of asthma, diabetes, and a restricted diet. (Guard Defs.' SOMF Ex. B, Pl.'s Dep. at 16-17, 26, 95.)[2] On September 19, 2012, plaintiff saw a specialist at the Chicago Institute for Voice Care where the treating physician recommended hearing aids, procedures to remove sinus polyps and a vocal fold lesion, and a tonsillectomy. (Medical Defs.' SOMF ¶ 34.) On October 11, 2012, plaintiff had outpatient surgery at University of Illinois Chicago ("UIC") that was recommended on September 19, including the removal of a polyp in his larynx. (*Id.* ¶ 35; Guard Defs.' SOMF ¶ 9.) Upon his return to Stateville, plaintiff was admitted to the infirmary and given post-operative care. (Medical Defs.' SOMF ¶ 37.) While plaintiff was in the infirmary, he took all of his meals in his cell and was provided with a special soft food diet. (*Id.* ¶¶ 39-40.) Plaintiff was discharged from the infirmary on October 18, 2012 and received a lay-in tray which he testified "never stopped" and was still receiving at the time of his deposition in July 2015. (*Id*. ¶¶ 41-42; Pl.'s Dep. 46-47, 156.)[3] Plaintiff also continued to receive the special soft food diet after he was discharged from the infirmary. (*Id*. ¶ 44; Pl.'s Dep at 62-63.) At some point, plaintiff's diet was changed from soft foods to bland foods, and at the time of his deposition, he was still receiving the bland food diet. (*Id*. ¶ 45.)

---

[2] IDOC inmate locator can be accessed at https://www.illinois.gov/IDOC/OFFENDER/Pages/InmateSearch.aspx (last visited July 29, 2016).
[3] A lay-in is a medical permit allowing meals to be brought to the inmate's cell or for an inmate to go to the dining room and bring his meal back to his cell. (Guard Defs.' SOMF ¶ 12.) A lay-in is permitted in situations when, for medical reasons, an inmate cannot finish his food within the normal time frame allowed for meals. (*Id.*)

Inmates need a permit authorizing a lay-in. (Guard Defs.' SOMF ¶ 13.) Dr. Obaisi is authorized to issue such permits; however, Nurse Dybas is not. (Medical Defs.' SOMF ¶ 26.) Medical permits are written on triplicate carbon paper. (Guard Defs.' SOMF ¶ 14.) The original is kept in the inmate's medical records, one copy is given to the inmate, and the final copy is given to the correctional staff in the inmate's housing unit. (*Id.*) None of the medical defendants' job duties extend to enforcing or verifying the authenticity of medical permits. (Medical Defs.' SOMF ¶ 29.)

On November 19, 2012, plaintiff had a follow-up visit at UIC where he told the doctor his throat pain had decreased and his tolerance for eating had improved. (*Id.* ¶ 46; Ex. E at 1036-37.)[4] Plaintiff returned to Stateville that day with new hearing aids, two cases, and batteries. (*Id.* ¶ 47.) Upon his return, Nurse Dybas took plaintiff's vitals and contacted Dr. Obaisi to report on plaintiff's condition and receive orders. (*Id.* ¶ 48.) Dr. Obaisi directed Nurse Dybas to take plaintiff's hearing aids. (*Id.*) Nurse Dybas testified that she had to take plaintiff's hearing aids because he returned to Stateville after hours when Dr. Obaisi was not available to provide plaintiff with a permit and Nurse Dybas was not authorized to issue permits. (*Id.* ¶ 49.) Plaintiff acknowledged that Nurse Dybas took the hearing aids because he needed a permit for those devices. (*Id.* ¶ 50.) Without a permit for the hearing aids, they would be confiscated by the guards. (*Id.* Ex. D, Dybas Dep. at 11.)

The next day, November 20, 2012, plaintiff was seen by a licensed nurse practitioner who returned plaintiff's hearing aids. (Medical Defs.' SOMF ¶ 51.) That same day, Dr. Obaisi issued plaintiff a medical permit allowing him to possess two hearing aids. (Guard Defs.' SOMF ¶ 11.)

---

[4] The Court notes that plaintiff objects to these statements as inadmissible hearsay. (Pl.'s Resp. to Medical Defs.' SOMF ¶ 46.) However, Fed. R. Evid. 803(4) "excepts statements made by a person seeking medical attention to the person providing that attention." *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 564 (7th Cir. 1996). Accordingly, the Court can consider statements made by plaintiff to medical staff while he was under their care.

The record contains three copies of the medical permit authorizing the hearing aids. (*Id.* Ex. F at 145-46, 1044.) The copies are labeled "file copy," "inmate copy," and "unit copy." (*Id.*) The file copy and the unit copy appear to indicate that plaintiff was authorized to possess the hearing aids only. (*Id.* at 146, 1044.) The inmate copy appears to indicate that plaintiff was entitled to the hearing aids and medical lay-in. (*Id.* at 145.)

At his deposition, Dr. Obaisi testified that he did not recall whether plaintiff ever requested a lay-in but that he would not have given plaintiff permission to take food back to his cell because plaintiff did not have an issue with swallowing. (*Id.* at Ex. E, Obaisi Dep. at 16, 20.) Dr. Obaisi further testified that plaintiff had surgery on his larynx, which is an airway where food does not go. (*Id.* at 20-21.) Plaintiff testified that the surgery improved his ability to eat, but slowed the pace at which he ate, which sometimes "gets worse when [his] throat gets inflamed." (Pl.'s Resp. to Guard Defs.' SOMF ¶ 10; Pl.'s Dep. at 27-28.) Plaintiff also testified that Dr. Obaisi told him that he had a medical lay-in. (Pl.'s Dep. at 35.) Plaintiff further testified that Nurse Dybas gave him the permit for the medical lay-in, that he did not mark medical lay-in himself, and that he does not know who marked it. (*Id.* at 33, 35, 110.)

On November 24, 2012, plaintiff showed Lieutenant Burkybile a medical permit and stated that "he was allowed to bring his lunch tray back to the unit because the medical lay in section was marked." (Guard Defs.' SOMF Ex. G at 19.) Burkybile then checked the unit's copy of plaintiff's medical permit and "noticed the medical lay in section was not marked." (*Id.*) When Burkybile examined the copy of the medical permit issued to the unit alongside the copy of the medical permit plaintiff had, he stated "it was obvious the permit [plaintiff] had in his possession had been altered to reflect a medical lay in." (*Id.* at 20.) Burkybile then issued plaintiff a disciplinary ticket for possessing a forged or altered medical permit. (Guard Defs.'

4

SOMF ¶ 15.) Burkybile had no involvement with plaintiff's discipline after writing the ticket and had no knowledge of plaintiff's health history. (*Id.* ¶¶ 22-23.)

On November 26, 2012, plaintiff appeared before the Adjustment Committee, which consisted of Lieutenant Best and a counselor, and pleaded not guilty. (*Id.* ¶ 16.)[5] Plaintiff did not present any documents at the Adjustment Committee hearing and testified that he did not know who marked his medical permit. (Pl.'s Dep. at 109-10.) In a written decision, the Adjustment Committee stated that they reviewed plaintiff's copy of the medical permit and the cell house's copy of the medical permit and that it was obvious that plaintiff's copy had been altered to allow for a medical lay-in. (Guard Defs.' SOMF ¶ 19; Ex. G at 21.) Further, the decision indicated that the health care unit verified that plaintiff did not have a medical lay-in. (*Id.*; Obaisi Dep. at 18.) As discipline for the infraction, the Adjustment Committee recommended one month of C-grade, one month of segregation, and one month of commissary restriction, which the Warden later approved. (*Id.* ¶ 18.) Besides the Adjustment Committee, Best had no involvement with plaintiff and had no knowledge of plaintiff's health history. (*Id.* ¶¶ 24, 26.)

Plaintiff's disciplinary segregation started on November 27, 2012. (Medical Defs.' SOMF ¶ 54.) That same day, plaintiff attempted suicide. (*Id.* ¶ 57.) Plaintiff was immediately admitted to the infirmary and placed on suicide watch. (*Id.* ¶ 58.) Plaintiff admits that he chose not to take any of his prescribed medications throughout the time he was on suicide watch in the infirmary. (*Id.* ¶ 59.) Notes made by infirmary staff during this time corroborate plaintiff's testimony. (*Id.* Ex. E at 292, 294.)[6] A note from November 28, 2012, indicates that plaintiff

---

[5] Best is the chair of the Adjustment Committee and hears all the disciplinary infractions from inmates at Stateville. (Guard Defs.' SOMF ¶ 25.)
[6] The Court notes that plaintiff objects to these statements as inadmissible hearsay. (Pl.'s Resp. to Medical Defs.' SOMF ¶ 60.) However, Fed. R. Evid. 803(4) "excepts statements made by a person seeking medical attention to the

5

stated that he was working towards taking his medications and was "doing okay right now." (*Id.* at 328.)[7] Plaintiff was taken off suicide watch on December 13, 2012 and was discharged from the infirmary the following day. (Medical Defs.' SOMF ¶¶ 63-64.) On December 14, 2012, plaintiff was also transferred to a disciplinary segregation unit. (*Id.* ¶ 64.) Plaintiff's disciplinary segregation was terminated on December 21, 2012 but he remained in a segregation unit until August 2, 2013. (*Id.* ¶¶ 65, 78.) At his deposition, plaintiff testified that he refused to inject himself with insulin because of a fear of needles. (Pl.'s Dep. at 69-70, 78.)[8] Plaintiff further testified that he was offered diabetes medication every day while in segregation, but would only accept insulin treatments if someone injected him. (Pl.'s Dep. at 79-81.) Inmates housed in the infirmary and segregation always have their meals brought to them. (Guard Defs.' SOMF ¶ 27.)

On January 10, 2013, Dr. Obaisi noted that plaintiff was out of all of his medications, which were taken away because of his refusal to take them while he was in segregation. (Medical Defs.' SOMF ¶ 66.) That same day Dr. Obaisi renewed plaintiff's prescriptions, including the oral blood glucose lowering medication (Glucotrol/Glipizide). (*Id.*) On January 14, 2013 the Glucotrol prescription was delivered to plaintiff's cell. (*Id.* ¶ 68.) At his deposition, Dr. Obaisi testified that he wanted to regulate plaintiff's blood-sugar level, but plaintiff would not accept insulin and "requested to be back on pills." (Obaisi Dep. at 9.) Dr. Obaisi further testified that "the oral medications did not control [plaintiff's] blood sugar and he has to be on insulin." (*Id.*)

At an appointment on February 22, 2013, Dr. Obaisi recorded that plaintiff's blood glucose level was poorly controlled, and prescribed him insulin. (Medical Defs.' SOMF ¶¶ 69-

---

person providing that attention." *Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 564 (7th Cir. 1996). Accordingly, the Court can consider statements made by plaintiff to medical staff while he was under their care.
[7] *Id.*
[8] Plaintiff testified that he was diagnosed with diabetes sometime after 1990 and sometime before 2010. (Pl.'s Dep. at 15-17.)

70.) The prescription order directed staff to inject plaintiff's insulin for two weeks. (*Id.* ¶ 70; Ex. E at 925.) At plaintiff's deposition he testified that in addition to being afraid of needles, he felt that it was the nurse's responsibility to inject him because Stateville is a maximum security prison and that the needle is "a weapon." (Pl.'s Dep. at 74-75.) Dr. Obaisi testified that the nurses told him they cannot inject inmates and that injecting the insulin is the inmate's responsibility. (Medical Defs.' SOMF ¶ 71; Obaisi Dep. at 9.)

Early on the morning of February 23, 2013, a note was entered in plaintiff's medical record indicating that he did not know how to check his blood glucose level, that the process was demonstrated for him, and that plaintiff was told he needed to be independent with the process. (Medical Defs.' SOMF ¶ 72; Ex. E at 355.) Later that day, plaintiff received training on how to check his blood glucose level and how to inject insulin. (*Id.* ¶ 73.) That evening, Dr. Obaisi noted that plaintiff requested to hold off on insulin therapy but then changed his mind and requested to start insulin as ordered. (*Id.* ¶ 74; Ex. E at 348.)[9] Plaintiff testified that he now injects himself with insulin. (*Id.* ¶ 79.) Plaintiff filed this lawsuit in June 2014 [1].

## STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. *See Kvapil v. Chippewa County, Wis.*, 752 F.3d 708, 712 (7th Cir. 2014). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable

---

[9] The Court notes that plaintiff objects to these statements as inadmissible hearsay. (Pl.'s Resp. to Medical Defs.' SOMF ¶ 74.) However, Fed. R. Evid. 803(4) "excepts statements made by a person seeking medical attention to the person providing that attention." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 564 (7th Cir. 1996). Accordingly, the Court can consider statements made by plaintiff to medical staff while he was under their care.

7

jury could return a verdict for the nonmoving party.'" *Talanda v. KFC Nat'l Mgmt. Co.*, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681-82 (7th Cir. 2014). The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." *Modrowski v. Pigatto*, 712 F.3d 1166, 1167 (7th Cir. 2013).

## DISCUSSION

**Guard Defendants**

<u>Lieutenant Burkybile</u>

First, Burkybile argues that plaintiff has failed to state a retaliation claim against him because plaintiff has not identified any protected activity that allegedly motivated Burkybile to issue the ticket. Burkybile also asserts that plaintiff's claim that Burkybile allowed another inmate to steal plaintiff's personal property is not actionable under § 1983. Burkybile then argues that plaintiff's claim that he denied plaintiff's request to see a crisis officer is controverted by plaintiff's deposition testimony. Next, Burkybile argues that he did not act with deliberate indifference when he compared plaintiff's copy of the medical permit with the unit's copy of the medical permit, and issued plaintiff a disciplinary ticket. Finally, Burkybile argues that because he had no involvement with plaintiff's discipline after writing the ticket, the Adjustment Committee was responsible for disciplining plaintiff, and segregation was one of several disciplinary measures taken against plaintiff, he was not responsible for plaintiff's time in segregation. For all of these reasons, Burkybile contends that no reasonable person could find that he acted with deliberate indifference to plaintiff and asks the Court to grant summary judgment in his favor. Plaintiff responds by arguing that Burkybile ignored the evidence of his

8

medical accommodation, accused him of altering the permit, and caused him to be punished for asserting his right to medical care.[10]

In order to state a retaliation claim under § 1983, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009) (internal quotation omitted). Plaintiff does not identify a protected activity against which Burkybile retaliated. Burkybile wrote plaintiff a ticket for forgery and giving false information to an employee for doing those things, not in retaliation for some other protected activity in which plaintiff engaged. Plaintiff has failed to state a § 1983 retaliation claim against Burkybile.

Deliberate indifference to a serious medical need consists of both an objective and subjective component. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). An objectively serious medical condition is one that has been "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Id*. To satisfy the subjective component, the plaintiff must show that prison officials "knew of a substantial risk of harm to the inmate and disregarded the risk." *Id.* Neither component is satisfied here. There is no evidence to show that Burkybile knew of plaintiff's surgery or any of his other medical issues. Further, there is no evidence to show that anything about the interaction between Burkybile and plaintiff on the day the ticket was issued would have indicated that plaintiff needed medical attention. Plaintiff did not have a serious medical need. Even if plaintiff could demonstrate that he had a serious medical need on the day Burkybile issued the

---

[10] Because plaintiff does not address the allegations that Burkybile allowed plaintiff's property to be stolen and denied plaintiff's request to see a crisis officer, the Court deems those allegations waived. *Palmer v. Marion County,* 327 F.3d 588, 597-98 (7th Cir. 2003).

ticket, there is no evidence to show that Burkybile knew of a substantial risk of harm to plaintiff and disregarded it. Burkybile issued plaintiff a ticket for possessing a forged medical permit and giving false information to an employee. Comparing copies of the medical permit, writing plaintiff a ticket that resulted in punishment by another entity, and denying plaintiff the lay-in, do not amount to deliberate indifference and no reasonable jury could find otherwise. Accordingly, summary judgment is granted as to defendant Burkybile.

Lieutenant Best

Best argues that the procedural due process to which plaintiff is entitled was satisfied by the Adjustment Committee hearing and that summary judgment should be granted in his favor. Best also argues that to the extent plaintiff is raising a deliberate indifference claim against him, the record is clear that as a non-medical individual, Best was justified in relying on Dr. Obaisi's verification that plaintiff did not have a permit for a medical lay-in. Plaintiff responds by arguing that he has shown that there are issues of fact as to the genuineness of the lay-in medical permit, plaintiff's need for it, and who, if anyone, altered the permit.[11]

Though plaintiff argues that there are issues of material fact as to who altered the medical lay-in permit plaintiff presented to Burkybile, that is not the issue before the Court. The issue, as it relates to Best, is whether plaintiff was provided due process at his hearing before the Adjustment Committee. In order to challenge the process he was afforded in a disciplinary hearing, a prisoner must demonstrate he has a liberty interest with which the state has interfered and that the procedures afforded were constitutionally deficient. *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007). The Seventh Circuit has held that "short terms of segregation rarely give rise to a prisoner's liberty interest[.]" *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir.

---

[11] Plaintiff does not address the allegations of a deliberate indifference claim against Best. Accordingly, the Court deems that allegation waived. *Palmer,* 327 F.3d at 597-98.

2013). Because plaintiff was given thirty days of segregation, it is unlikely he can establish that he was deprived of a liberty interest.

Even if plaintiff could so demonstrate, his due process claim must fail because the undisputed facts show plaintiff received the constitutional process he was due. In the context of a prison disciplinary proceeding, "due process requires that [plaintiff] receive advance written notice of the charges, the chance to present testimony and documentary evidence to an impartial decision maker, and a written explanation, supported by at least some evidence in the record, for any disciplinary action taken." *Langerstrom v. Kingston,* 463 F.3d 621, 624 (7th Cir. 2006) (internal quotation omitted). Plaintiff was given notice of the violation when Burkybile wrote him the ticket, plaintiff attended and testified at the Adjustment Committee hearing (even though he did not tender evidence or witnesses), and the written decision indicates that after comparing the two medical permits and verifying with the health care unit that plaintiff did not have a medical permit authorizing a lay-in, the committee was satisfied that plaintiff had committed the violations cited. No genuine issues of material fact exist to suggest that plaintiff was not afforded the process he was due, and no reasonable jury could find otherwise. Accordingly, summary judgment is granted as to defendant Best.

**Medical Defendants**

At the outset, all of the medical defendants state that plaintiff has failed to exhaust his administrative remedies against them and that he cannot cure his failure to do so because of the statute of limitations. The medical defendants also argue that plaintiff has failed to show that they acted with deliberate indifference because plaintiff has not shown that he suffered an objectively serious medical condition or faced a substantial health risk due to the alleged failure to authenticate his medical permit. They further argue that even if plaintiff could assert that

being placed in disciplinary segregation created such a risk, none of the medical defendants had the authority to authenticate plaintiff's medical permit or to prevent IDOC's guards from placing him in disciplinary segregation. Additionally, the medical defendants argue that plaintiff cannot show they acted with deliberate indifference because there is no evidence that plaintiff was deprived of the lay-in tray. Next, the medical defendants argue that any lapse in plaintiff's insulin treatments was caused by his refusal to comply with their efforts to treat that condition. Finally, Nurse Dybas states that she did not subject plaintiff to any substantial health risk when she took his hearing aids, that she did not deviate from any known standard of medical judgment in so doing, that plaintiff suffered no injury as a result, and that because plaintiff acknowledged that Nurse Dybas took the hearing aids because he needed a permit for them, no reasonable jury could find that she acted with deliberate indifference. Accordingly, all the medical defendants argue they are entitled to summary judgment.

Plaintiff responds by arguing that defendants have waived their exhaustion argument because discovery on the merits has already occurred. Plaintiff also argues that there are genuine issues of material fact as to whether he was issued a lay-in medical permit or whether it was altered. Plaintiff further argues that the medical staff acted with deliberate indifference when they deprived him of insulin and that Nurse Dybas should have been aware of the health risk associated with requiring plaintiff to live without hearing aids.

Exhaustion

While the Seventh Circuit has not held that a party waives an exhaustion argument when it is raised for the first time in a motion for summary judgment, it has instructed that "in the ordinary case discovery with respect to the merits should be deferred until the issue of exhaustion is resolved. If merits discovery is allowed to begin before that resolution, the

statutory goal of sparing federal courts the burden of prisoner litigation until and unless the prisoner has exhausted his administrative remedies will not be achieved." *Pavey v. Conley,* 544 F.3d 739, 742 (7th Cir. 2008). Further, "it is better practice to hold a *Pavey* hearing separate from and before considering a motion for summary judgment." *Wagoner v. Lemmon,* 778 F.3d 586, 593 (7th Cir. 2015). Because discovery is closed and the Court grants summary judgment in favor of the medical defendants on the merits, it is not necessary to consider their exhaustion argument.

### Medical Lay-In

Plaintiff testified that his lay-in "never stopped" and that at the time of his deposition in July 2015, he was still receiving a lay-in. There is no evidence to show that plaintiff was deprived of the lay-in accommodation. Even if plaintiff did not receive his lay-in for the three days between being issued the ticket and being placed in disciplinary segregation and on suicide watch, no reasonable jury could find that such a deprivation amounts to deliberate indifference on the part of PA Williams, Nurse Dybas, or Dr. Obaisi. *Greeno,* 414 F.3d at 653. They were not responsible for or involved in issuing plaintiff the ticket or the punishment he received thereafter. Further, the Adjustment Committee's written decision confirms that the health care unit verified that plaintiff did not have a lay-in. Plaintiff's deposition testimony that Dr. Obaisi told him otherwise does not create a genuine issue of fact as to whether the medical defendants acted with deliberate indifference. There simply was no substantial risk of harm that the medical defendants disregarded as it relates to the lay-in tray.

### Diabetes Treatment

The record indicates that plaintiff refused to inject himself with insulin while he was on suicide watch in the infirmary and in segregation until February 2013 because of a fear of

13

needles. It is not clear how long before his time in the infirmary plaintiff had been treated for diabetes, but the Court assumes at least two years because plaintiff testified he was diagnosed with diabetes sometime before 2010. The record is silent as to how plaintiff's diabetes was treated prior to November 2012.

"To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment." *Norfleet v. Webster,* 439 F.3d 392, 396 (7th Cir. 2006). Even "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). In January 2013, Dr. Obaisi renewed plaintiff's prescription for oral diabetes medication and, at an appointment on February 22, 2013, prescribed plaintiff with insulin and ordered staff to inject plaintiff because his blood glucose level was poorly controlled. Unnamed staff apparently did not inject plaintiff because that is the inmate's responsibility. One day later, plaintiff evidently started his insulin treatments and continues them today. On these facts, no reasonable jury could find that the named defendants acted with deliberate indifference towards plaintiff's diabetic condition. Dr. Obaisi prescribed an oral diabetes medication when plaintiff refused to inject himself. Later, Dr. Obaisi ordered staff to inject plaintiff with insulin when he learned plaintiff's blood glucose level was not controlled. No reasonable jury could find that Dr. Obaisi's actions to treat plaintiff's diabetes were not based on medical judgment or even rose to the level of medical malpractice.

While it appears plaintiff may have gone a day without insulin after Dr. Obaisi ordered it, plaintiff is not raising a claim against those staff members who would not inject him, but rather against Dr. Obaisi for not intervening once those staff members refused. A delay in treatment may rise to the level of deliberate indifference if the delay "exacerbated the injury or

unnecessarily prolonged an inmate's pain." *McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010). The record indicates that the day after Dr. Obaisi ordered the insulin, plaintiff received training on how to check his blood glucose level and requested to start the insulin as ordered. There is no evidence in the record to indicate that any delay caused plaintiff pain or exacerbated any injury. Accordingly, no reasonable jury could find that there was a failure to intervene or that any of Dr. Obaisi's actions rose to the level of deliberate indifference.

### Hearing Aids

Plaintiff has been incarcerated at Stateville since 1995 and, as evidenced by the record, did not have hearing aids before November 19, 2012. The record further demonstrates that plaintiff was without his hearing aids for one day after receiving them. Plaintiff has failed to demonstrate after living without hearing aids for 17 years while incarcerated, that being deprived of them for one day subjected him to a substantial risk of harm of which Nurse Dybas should have been aware. No reasonable jury could find otherwise.

Because there are no genuine issues of material fact that PA Williams, Nurse Dybas, or Dr. Obaisi acted with deliberate indifference towards plaintiff's medical needs, summary judgment is granted in their favor.

### 28 U.S.C. § 1915(g) of the Prisoner Litigation Reform Act ("PLRA")

Finally, the medical defendants argue that plaintiff's claim is frivolous and malicious and that the Court should enter a strike against him pursuant to the PLRA. Plaintiff responds by arguing that because the Court already found his complaint not frivolous or malicious when it was initially screened, he should not be issued a strike. The Court agrees. Because plaintiff's complaint was screened pursuant to 28 U.S.C. § 1915A and was not found to be frivolous,

malicious, or that it failed to state a claim [10], and proceeded to a decision on the merits, the Court declines to issue a strike at this time.

## CONCLUSION

For the reasons set forth above, summary judgment is granted as to all defendants. Plaintiff's counsel is directed to ensure plaintiff receives a copy of this Order in response to the letter that was filed 6/23/16 [75].

**SO ORDERED.**                                   **ENTERED:** August, 1, 2016

_____
**JORGE L. ALONSO**
**United States District Judge**